Good afternoon, ladies and gentlemen. The case for this afternoon is Mullins v. Direct Digital. Mr. Rothman. May it please the court, my name is Ari Rothman and I represent Appellant Direct Digital. And Direct Digital appeals to district courts granting of class certification and seeks reversal of that order on several grounds which we've laid out extensively in our briefs. In short, we contend that the district court entered or erred in granting class certification by failing to conduct the rigorous analysis required by the Walmart decision in the Supreme Court. The district court failed to consider a host of unique offenses going to typicality, adequacy, and commonality. The district court conducted no predominance analysis. And equally important, the court accepted what we view as an equally or fatally incomplete ascertainability analysis when granting certification. Mr. Rothman, you persuaded us to hear this appeal on the theory that ascertainability was worth hearing and that the law in this circuit is not well developed and that we should weigh in. Your brief argues that we've already decided the issue. Which is it? I think now that we've also seen our counterpart's brief, I don't think the issue has been as clearly decided. Maybe it hasn't even been decided. And here's what I mean by that. The other side's brief convinced you that you... No, no. The other side's brief convinced us that our point wasn't as clear as it should have been. And here's what I mean by that. We do not need Carrera to defeat class certification. That's the third circuit case that's been discussed extensively in the briefing. And we don't say that the plaintiff needs to identify by name every class member when the case is filed or even at the class certification stage. What we're saying is that in addition to setting forth objective criteria to identify class members, the plaintiff at the class certification stage, especially in this one where there's been nine months of discovery, needed to set forth administratively feasible means of identifying class members. I thought you were arguing that affidavits would not be sufficient. In this case, they're not sufficient. We are not seeking a global rule that affidavits are never sufficient. Then can you explain the legal rule you're arguing for that you Our view is that the seventh circuit should hold that at the class certification stage, a plaintiff needs to show more than nothing, which is what they've done here, to show that a class or identifying a class can be administratively feasible. In other words, that there is an administratively feasible means of identifying class members. And what the plaintiffs say is that they don't need to do that, if at all, until after a judgment has been entered against us. We say that that needs to be done now. Now there's a distinction between identifying class members by name and setting forth a plan at the district court that says at least how they're going to do it. And their own cases What's wrong with just notice in a claim process with an affidavit under oath, I bought it. I bought this quantity, this approximately this time. Well, what they I'm not even sure that that's what they say they're going to do here. I mean, the problem is, is in this case, it's not a multi. Well, look, Mr. Rothman, this is sounding like a moving target or a bait and switch appeal. All right. So let's try to go back to your original reasons for persuading us to hear this appeal. And tell me what you think we ought to decide. Tell all of us what you think we ought to decide. The issue, the rule that we want to have established in this circuit is that a plaintiff on a motion for class certification and to have a class certified must show administratively feasible means of identifying class members. Here, they haven't done that. They say they don't need to do it. In their brief that they filed in May, they say the identification of class members, including by affidavit, is not a Rule 23 consideration. We say it is. We say that at the district court level, they needed to put forth a plan, not give notice, but a plan to show that if a class is certified, and if this case were to proceed past the class certification stage, that they would be able to employ an administratively feasible means of identifying class members. And their own cases say that. They're all outside the Seventh Circuit, but their own cases say that. So take, for example, Alito-Lilley versus Jamba Juice. That's a case that they say enables them to put this burden that we say should exist off until after trial. And this circuit has never had one? Has never had, I'm sorry? Had that issue presented? I don't think it's been clearly articulated. I mean, what we see is, we found the Hardy case, which we cited in our brief, and that case seemed to suggest that there would have been some administratively feasible requirement at the class certification stage, but the discussion wasn't, no requirements were set forth. In other words, there wasn't anything that said what must be shown, whether it must be shown. The issue of when, of identifying class members by name, that wasn't decided in that case. So we don't think that that case goes our way. We think it supports the idea that there's an administratively feasible requirement at the class certification stage, but I don't think it goes as far as we think it should go in this case. And we think if it had been that clearly articulated— What's the plaintiff's definition of the class? The plaintiff's definition, well, the class definition is all individuals who purchased Instaflex for personal use during the class period and the court certified a multi-state class, and I believe they set forth the 10 or 12 states where the class members would exist. And so that's the objective requirement, right? That is them fulfilling the requirement that there must be an objective criteria to identify class members. We say that's distinct, although related, to setting forth an administratively feasible means of identifying class members. And if the Seventh Circuit had decided that issue clearly, then they would have come forward with administratively feasible means of identifying class members, and they didn't. And why does it make—if a district judge believes that this is a problem that is solvable, and obviously there are hundreds of different ways and many class actions to solve the problem of identifying class members eventually, why does the district judge have to commit at the time of certification to a particular plan? I don't think the district court has to necessarily commit to a particular plan. I think the district court has to be comfortable that if this gets past the certification stage, that there is a plan in place, that there is a way to weed out fraudulent claims, that there are ways that if this case goes through trial, that class counsel has a plan in place that can be effectuated. Now, there might be twists and turns along the way. Something—a trial might happen. Some claims may fall out. I mean, it's impossible to predict exactly what's going to happen through trial. But you don't believe there's any way to determine what the class members are? Well, this is retail. A lot of these purchases are at retail. According to them, most class members didn't keep receipts. There's 13 other products— Oh, if they charged it? I mean, there are a number of ways they can prove that they bought it, other than just a receipt. Well, they haven't set forth how they could do it. And we say that was their burden. We say they had to come forward with that evidence. Is there sold in drugstores and things like that? Some drugstores, that's right. What's the retail price? I think it's about $70? $70. Okay. And the other reason why is Rule 23 doesn't set forth the—it doesn't have the word administratively feasible requirement in it. But Rule 23 says that, and this is a quote, at an early practical time, after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action. That's Rule 23C1A. And so our view is, is if the court is going to enter such an order, it should consider the relevant—all the relevant factors under Rule 23, not part of them now and part of them later. Because then we're in the weird situation of having to go through trial, suffer a judgment, putting that on our books, alerting—you know, it's a material adverse consequence, so there's accounting issues with respect to that. And then finding out at that stage, after all that's happened, that, okay, now it's not administratively feasible. And we think that's not efficient. I can't—was this product advertised on TV? It was. I want to say yes, it was, and on the Internet. Why is an affidavit not sufficient here? In this case, you are requiring the affidavits to remember where they purchased it, because this isn't a nationwide class action. You're asking them to remember which of the three products they purchased, because there's three different InstaFlex products. You're asking them to discern between the InstaFlex products on the one hand and the 13 others, which were sold at retail on the other. And you have the whole issue of, did they purchase it in the first place? The other issue is— So do you want to cross-examine them? Well, I don't know about cross-examining them, but certainly their individualized hearings would be required to determine whether or not they purchased it. Okay. We've always had individual—at least the class action law has always allowed for individualized damages determinations, right? Sure. Why would this be any more burdensome? Because the means of crossing them—I'm not really—again, it's a memory test. What you're saying is that the stakes are so low on individual grounds that we should simply effectively prohibit this class, right? No. I think what we're saying is because—actually, we think the opposite. We think it's because the stakes are so high for us, because if a class is certified and there's a judgment entered against us and everything else, it puts the company out of business. So we're saying because the stakes are so high that something more is required than asking a consumer, did you purchase it in this date, during this time period, at this price, from this store? Well, the stakes are obviously high for you. But I guess I'm still having trouble understanding—and let me explain why. You seem to be very concerned about fraudulent claims. Is that right? That is one of our concerns, yes. And not even fraudulently, but mistaken claims. Fraudulent or mistaken claims. Okay. In claim—in class action practice, with these retail, low-dollar products, what is a typical claims rate? I mean— Higher than 5%? Yeah, 5% to 10%, maybe on the higher end. But in facts, we see settlements where it's 1%, right? That's not uncommon? And you seem to be terribly concerned about the danger that there might be in those—in that tiny fraction of people who actually respond to a class notice or settlement or judgment or claims process, that there might be a small fraction who would submit mistaken claims. And what concerns me is that with that approach or the Third Circuit's approach, in essence, you're making a focus on perfection in accurate claims defeat the larger goals of deterrence and compensation where there is, in fact, a viable claim. I don't think we're going that far. I think what we're saying is in this case, given that we have no—the predicate to the affidavits is how you're going to identify who should be submitting them. And they should be identifying some plan to identify who should be submitting them, what it's going to say, and how we're going to make sure—because it's not just this case. This is only a 10-state, 12-state case. What about the other states? Somebody sees this, they file on the other states, and all of a sudden, we could be seeing claims coming from people that filed claims in this case. Mr. Rothman, your brief got me wondering about this reliance on one affidavit to prove a claim. And I am aware of only one sort of case where the sworn testimony of one witness is about a fact within his or her personal knowledge is not enough to prove the case. And that's under Article 3, Section 3 of the Constitution. Treason against the United States requires two witnesses to the same overt act. As far as I know, any other wrongdoing up to and including first-degree murder can be proved by one witness's testimony, right? Are there other exceptions you're aware of? I'm not aware of any other exceptions except that in this case, it's more about—it's not just the affidavit issue. It's about making sure that the right people are submitting them and that it has—they set forth a plan to do that. That's what Rule 23 requires. It's not just submitting an affidavit hoping everything works out for the best. It's making sure that these are the right people, and they have a plan to get those right people, and now is the time to do it, and they didn't. So notice by publication? What's wrong with that? They haven't put forward a notice plan. If you take a look at their own cases, the Jamba Juice case, the reason why that court was okay with it was because they put forth a, quote, detailed plan for notice prepared by a commissioned media and notice expert. And the Jamba Juice case, which they rely on, compared that case with the other case, which is—well, they don't mention this one explicitly, but this is the one we think would apply here. Quote, this distinguishes this case from those in which plaintiffs provided no plan to ascertain class membership. They provided no plan. They have to provide a plan. Did you keep a record of the number of bottles produced and how they were sold? That is, by—through the mail or through email or retail? Generally, yes. Generally, yes. Well, we know how much we sold wholesale, so we can assume that those went retail, and I see that I'm out of time. That's okay. We'll give you more. We'll give you more time. So you have a record of how the product was sold? What source is that? In the large, that's true. So you could answer questions, for example, what percentage were sold by mail, what percentage were sold to wholesalers, what percentage and so on? We could probably do that. And if we did do that, then it would be on them to come forward, and they should have with the plan in order for us to get this thing going rather than figuring it out later. It's a timing issue. We'll give you a couple more minutes. Thank you, Your Honors. May it please the Court, I'm Stuart Weltman on behalf of the plaintiff. With respect, and obviously we're limiting ourselves to the ascertainability issue, I think if our briefs didn't make it clear, first off, I don't think there is a term ascertainability that necessarily exists in Rule 23. I think the courts have dealt with the concept of what some people call ascertainability, and that is whether or not the class definition is such that membership is objectively determined. And here the class definition clearly sets forth a means by which there's an objective determination. Oh. So how the class definition identifies the people in the class are purchasers of Instaflex for a period, the class period. That's an objective determination. Now, of course, when it comes to the claims process, that's going to have to be submitted. The determination of who actually purchased the product will have to be determined probably by a claims process or by affidavit. But in terms of who was defrauded, for instance, in this case, we know the amount of bottles that were sold. We have alleged that we will prove that each bottle sold was a worthless product. So we have an objective determination of what the amount of the fraud is. How did you acquire the information of how many bottles were sold? I'm sorry, I didn't hear you. How did you acquire that information? Oh, it was produced to us in discovery. They gave us their full... In discovery, and that was the question I was asking your opponent. Did you also learn the number sold and by what means they were sold? We have a reasonable estimate of that based upon documents that they produced to us. This company, I mean... Well, that's just my question. Sure. I asked him that, and you've done that. Yes. I mean, just so you know, and this is a point of law that we are arguing here, quite frankly, because from what we understand, the substantial bulk of their sales are made directly by the company. So most class members' e-mail addresses and mailing addresses in this case will likely be available to the defendant when we send out notice. Have you asked for that yet? No, we have not, because obviously we wanted to make sure that our class is certified, and then when the class is affirmed, which is the normal course of events, we will then implement a notice plan in which we will seek to provide direct notice to those people who are identifiable and mail notice to the...not mail notice. But you do believe that it's a high percentage of the total sales? Oh, I think so. I think it's over 50%. Do we have that anywhere in our record? You don't have it in your record because we did not believe that that was a relevant consideration for the Rule 23 determination, and I was only providing it to you as an aside here. I understand, but is it before the district court? No, it was produced in discovery. We did not argue it in the district court, so that's why I'm just pointing it out as a practical matter. Is your discovery part of the record? Yes, yes. It is a part of the record. Yes, I mean, I don't know. I know that Mr. Adcock's deposition is part of the record here. I am not sure whether or not he gave a definitive answer about what percentage of their sales were, we'll say, online or direct from the company, but that might be a place where it's in the record. But quite honestly, to us, as a matter of law, the question is one of after the judgment is entered, then people can self-identify. I believe this court has touched on that issue in the, whether you call it the Suchanek case, I think it is, where I believe it was Judge Wood, said that at the claims process people can self-identify and assert that they have relied on the representations at issue. In this case, I submit everybody would have been injured if we prove our case because there's no other reason to purchase this product except for joint health. And if our expert is believed by the fact finder here, which will be Judge Norgal, and he finds that the product is worthless, then I think every purchase will have been proven to be worthless and therefore everybody will be entitled. Mr. Weltman, do you believe it would have been an abuse of discretion for the district judge to deny class certification on this basis? On the basis of ascertainability? Yes. I think it would have been, yes, because I think it would have been an error as a matter of law. Well, Rule B, we're talking here only about Rule B3 classes, right, 23B3 classes. You don't need to do ascertainability for B1 or B2, do you? I haven't thought about that. I know we're talking about a B3. I'll accept that for now. I haven't thought about it. Certainly that's where most of the money is in this business. B3 does talk about superiority of class action device, and that's a pretty broad umbrella. It certainly gives you a district judge, it seems to me, a textual basis for saying, can we actually manage this? And I guess I see ascertainability as one dimension of manageability. I could see where you're going. I'm not sure I'm going further than that. I'm just saying that if there's a third circuit has written about this implied requirement and so on, but a district judge has to be able to manage the process. I agree that every district judge has the discretion to determine manageability. And, of course, I haven't completely thought this through, but to me, it seems to me that if the basis in a small claim, large aggregate case, is that people are not going to be allowed to self-identify themselves, I have a very strong conviction that I think that's wrong as a matter of law. Do you have anything, a predicate for that strong feeling? Yes, I was about to give it to you, Your Honor. The reason to require more than self-identification appears, at least if one reads Carrera, that the basis is the defendant shouldn't have to pay more than they're responsible to pay for. Putting aside, let's assume there's 100 percent claims rate here, which is, of course, we know is a reality, doesn't happen. But for argument purposes, let's assume it's 100 percent claims rate. And let's assume that some percentage of those claims are fraudulent. Well, if you're going to require more than self-identification, say by affidavit or by claim form, and therefore deny class certification because you deem that to be unmanageable, then there is the precedent that, frankly, small claim, large aggregate cases are not viable. And as this Court has said in Hughes v. Corr, the small claim, and it's said, I think, in Sucheneck, too, small claim, large aggregate cases are the reason to do class actions. It's the most important type of case to certify. If we are going to allow judges to deny class certification based upon a manageability concern surrounding self-identification, it allows these cases to be obliterated based upon that point. And that's grounded in the policy of deterrence and compensation, which is at the crux of each of these statutes. It's deterrence and compensation. So if we're going to allow district judges to have the discretion to throw out a case because they decide that self-identification isn't manageable, then there really isn't any other standard here why one case survives and one doesn't other than the discretion of the judge. But it does mean that small claim, large... Wouldn't it require the plaintiff to point out how it is manageable in the face of the judge saying, I don't find it? Tell me how you could manage it. That might not be a bad idea. And if a judge were to do that, I assume that we, Plaintiff's Council, would hire a settlement administrator. They're very experienced in claims administration. They could give you a plan of administration. I'm sure it's pretty much by rote. But if that were a requirement, I'm sure it would be easily met because they do this. They have computer programs to figure out fraudulent claims. They do a lot of stuff. Well, first you start with the premise that the judge likes to have manageable cases. Yes. So it's a legitimate question. Correct. And so he says, how? And you say, I will bring an expert in. Is that what you're saying? Well, if you articulate a rule which requires us to articulate a claims administration plan as part of our proving manageability, then yes, that's what we would do. All right. So why don't I take the next step forward and say since we're permitting somebody to file, self-file, say, why don't we attach to the complaint the affidavit of the expert witness as to how it can be managed? If that's the requirement, we certainly will. I'm certainly going to follow whatever you tell me to do. I'm asking do you think that's a sensible requirement, and if not, why not? I don't think that really this concern is a concern that should be taken up at a class certification because... Why? Because at the heart of a class action. Well, as far as I'm concerned, if you, again, small claims, large aggregate cases... I understand. It would produce great attorney's fees, among other things. Well, sometimes. Not always. Only this could be hoped, I suppose. You're not doing this for free. That's right. Hope is eternal, yes. All of my pro bono work done when I was pregnant was accidental, not on purpose. But I'm curious... That's been true for many of us. I'm curious to know why there's any objection to saying that you can tell a trial judge, this is how you're going to manage it because I have this expert who will testify how to do it. Sure. What it will do is it certainly will increase the costs of initial filings and sort of inhibit plaintiffs from filing. But if that's the requirement that your honors are going to impose, that's the requirement that plaintiffs' counsel will follow. Can I ask you to follow up on this? I went back. The original petition said about ascertainability here that the question presented is, can ascertainability be determined based solely on untested evidence from purported class members? That was the question that, frankly, persuaded me that this was worth hearing on an interlocutory basis. What's happened here is that there's been a considerable shift in position, it seems to me, on the defendant's side, and the focus has become one on timing. And I think if I understood this discussion correctly, a district judge could decide at the class certification stage, well, I want to hear this plan for manageability and identifying class members, and I want to hear it now because I'm skeptical about whether you can do it. And a district judge would have the discretion to do that, I think. On the other hand, a district judge could also say, look, I've seen a lot of retail class actions before. We know how to solve these problems. We'll worry about this later. I would think a district judge has got discretion to do that, too. Neither of those questions is really what was presented in the petition, which has to do with this affidavit problem, the untested evidence from purported class members. But would you agree that this question about timing could be left to district judges' discretion? Absolutely. And I thought, quite honestly, that the court had, without calling it ascertainability, addressed this in the coffee maker. The Keurig. Keurig coffee. The Sucheneck. Yeah, Sucheneck. Not directly, of course, but by saying that the court, as I understand it, said, yes, causation and reliance are inherently individual issues, but that as a matter of law you shouldn't deny class based upon that because it can be determined at a later date during the claims process. Of course, the court didn't use the word ascertainability, but to me, implicit in that is the concept that these types of issues, self-identification, whether it's going to be by affidavit, whether it's going to be by claims form, is something that should be left to a later date after the class has been certified, and that would be during the claims process. Just so you understand from our perspective, what would happen at a trial is you would get a judgment for the aggregate amount of damages that were tainted with the fraud, and then that amount would be made available for class members to claim. So at that point in time, you would have a claims process, and that's where fraudulent claims could be weeded out. That's where the administrator could do what is necessary. How would you weed out fraudulent claims in a case like this? Well, I've been through the claims process, and I've seen claims administrators. They have software programs that can detect. Obviously, you can't have a software program that detects that somebody says in an affidavit, I bought it. But let's assume. We have to make some assumptions about human nature. Is the majority of people who are going to file, go through the process of filing those affidavits, are we going to assume that they're all going to perjure themselves and lie? I don't do that. I believe that there will be people who do. Oh, your faith in human nature is touching me. Well, I think we have to work on some assumptions one way or the other. People aren't greedy. Well, I don't know whether the amounts involved would help. There was a bus accident very recently, two days ago, if I recall, in Chicago. I was waiting to see people get on and off the back of the bus and come out the front. Fortunately, there was only one person on the bus, and that was the driver. One of the great things that happens with that is you watch people go. A bus that will hold 60 people will have 125 people who were on the bus when it got hit. That's a good point. It's an interesting phenomenon on how you can put people in smaller spaces. I guess one has to decide what presumption one's going to operate on. I know, but we have to. John Adams said it is prudent not to put virtue to too serious a test, and so I think that's probably an excellent axiom for all of us in the law field, don't put virtue to too serious a test. The easier it is for us to determine whether it's right is to reduce the number of cases where only the word of the alleged victim is involved. I don't know how you do it, but that's not my problem, because I'm not a plaintiff in a class action suit. Well, I see my time is up. As long as I'm talking, you don't have a problem. And I've got another question or two as well. You have plenty of time. Well, if I could just respond to that. There are a lot of cases where the only basis, just an individual case, where the only basis is the testimony of the claimant. So I don't think that makes any difference. Except you don't. Those people are subject to cross-examination. Well, these people could be subject to cross-examination. Now, there's your manageability thing. How many people do we think we're talking about? Well, you know, quite frankly, okay, I don't know. Well, give me a ballpark guess. Well, I think Judge Hamilton pointed out here that the percentage of claims that are made once a settlement is, we don't have too many judgment examples, other than perhaps Boeing versus Van Gemmert, where the claims rate was very low. You had some discovery, because you said you asked them where they sold it to. Did you ask how many were sold? Oh, we know the amount of bottles that were sold. How many? I don't know the exact number. It's certainly lots. Give me a wild ballpark guess. I would imagine it's close to a million. A million. Okay, we're at least at a ballpark. So you cross-examine a million people. Well, of course not. Of course not. But the question becomes, at least as far as I'm concerned, and of course I think that this court has at least leaned that way, is that, again, the process is a trial, and then a judgment is entered for the fraud that was committed. And then there's a claims process, how much that.  So the question becomes, do we throw the baby out with the bathwater? Do we let this defendant go scot-free and not pay a single dime? Because we may have some people in that claims process who file fraudulent claims. I don't think that's inherent. I think that's contrary to the policy. And as you indicated, you've got at least 50% that you know who purchased it. Yes. So are there any other questions, or should I? Judge Hamilton. Judge Hamilton. I was just going to ask for an update. As far as I can tell, no other circuit has gone as far as the Third Circuit with the ascertainability requirement. Do you know whether any other circuits have recently rejected that explicitly? No. I think this is, quite frankly, what I do know is, like this circuit for a while, the Ninth Circuit has been rejecting 23-F petitions. Ninth Circuit? What? That's about the only circuit I know that's been rejecting the petitions appealing from class certifications based upon ascertainability. But I do not believe any other circuit has weighed in other than this circuit, apparently. Thank you. Thank you, Your Honor. Thank you, Counselor. Let me give you three minutes addition, Your Honor. Incidentally, I enjoyed the exchange. It's always fun. Not always in this room. So I think the original question in our petition still is the question. And the question is, can ascertainability be determined solely on untested evidence from purported class members? Here, that's the only thing they've offered. What we're saying is, is you need something more than that. In this case, what he needed to show, because he said it was very easy, and it's done in the settlement process all the time, is how we're going to get the affidavits from the people, what they're going to say, how we're going to weed out fraudulent claims just generally. And if you look at their own cases, just have three of them, Fortunati, Lilly v. Jamba Juice, and Allen v. Simmel, Lason, all their cases, that's what they did. And that doesn't eviscerate class actions. That makes the plaintiff's counsel do their job. And that's what Rule 23 says. It says you have to do it now. And to the degree that there's any question that there's an ascertainability. It says the district judge needs to decide under, you agree this is, we're talking about B-3 classes. Yes. Okay. So you can do it under the guise of, under the umbrella of superiority. Yes. If you want a textual basis instead of having to make up a new requirement. Right. So why isn't that within the district court judge's discretion to decide when he or she is going to wrestle with those problems? Because the other part of Rule 23, I think it was 23C1A, says that the decision on class certification has to be done, quote, at an early practicable time after a person's dues are issued. So we're not saying it has to be done with a complaint. I guess what we're saying is it has to be done before trial. If you're going to rely solely on affidavits. I mean, there might be circumstances where a class action plaintiff can set forth reasons why the case is manageable. It has nothing to do with affidavits. In that situation, you wouldn't have to go to a notice plan or anything else. The other issues are, just briefly, in terms of manageability, if it was so easy, then we're not sure why they didn't do it. This idea that more than 50 percent of people are ascertainable or identifiable, that might be true, might not be true, but I can tell you that that was not something that was argued or certainly wasn't in the district court's order. If that were true, wouldn't that be pretty important? It would be important because their client didn't order through the Internet. So we have a class action. So to the degree that the court finds that that's an ascertainable group of people, then plaintiff is inadequate because he purchased with cash. So what volume of your purchases and sales were direct to retail? I can't. I don't want to even hazard a guess because I really don't know. I wasn't prepared to answer that today. It wasn't an issue that was argued below. It was in the record, though. I'll take your word for it. I don't know that because I don't know what all went into the record. It was not an issue that was vetted anywhere near extensively at the district court level. Would you agree that if that's true, this would be a pretty manageable class? You might have a subclass. You might have a subclass, but then the plaintiff wouldn't fall into that subclass because he purchased at retail cash, no proof of receipt, no proof of transaction. He doesn't even have proof that he used it. He doesn't have proof that he needed to use it. He did testify that he took it, didn't he? He testified that he took it. Yeah, and why isn't that good enough? Well, in this case, we don't think that he even needed to take it. In other words, it wouldn't have worked for him because he went to his doctor right before he purchased the product, and according to his own medical records, he didn't have any joint pain. His musculoskeletal check was passed. He purchased this first product called Joint Juice. That apparently didn't work, so he purchased this one anyway, and the only time he felt this joint pain apparently was when he was working out. I mean, that doesn't even seem to be the purpose of the product. Their own expert testifies. Well, it says there improved flexibility and increased mobility. Sure, and then their expert says that that claim is, plaintiff's expert says that that claim is false because according to the focus group or the people that were in the studies that he identified, they all had osteoarthritis, and they were over age 50 or 55, somewhere around there, and it didn't work for them. He's a healthy 33-year-old who works out. It works fine for people who don't have a problem. That's what they would say, but we have a clinical study that says otherwise. Thank you, counsel. Thank you. Thanks to both counsel. The case will be taken under advisement, and the court will be in recess.